SHIRLEY M. DEFOREST *v.* WILLIAM BALWICK ET AL.

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE No. 52279

Memorandum filed March 21, 1956.

*Richard H. Bowerman* and *John J. Pentz, Jr.*, both of New Haven, for the plaintiff.

*Archibald G. Marshall,* of Branford, for the defendants.

FITZGERALD, J. In August, 1952, the defendants William Balwick and Frank Natale became the owners of certain property in North Guilford whereon they conducted an amusement center for the public under the name of "Loveday's." A charge was made for admission. Part of the facilities consisted of a body of water for swimming. This area had available for use a low diving board and a high diving board. While using the latter board at about 9:30 o'clock on

the evening of June 21, 1954, the plaintiff sustained injuries which have given rise to the within action for damages.

The following additional facts are either undisputed or are reasonably supported by the evidence as a whole: On the early evening in question the plaintiff, then a lass of eighteen years, in the company of several friends went to the defendants' amusement center to swim. They all paid the customary charge for admission. On prior occasions the plaintiff, a good swimmer, had used the low diving board but not the high board. The latter board, installed new by the defendants during the preceding month, was two feet in width and tapered to a lesser width at its end. It extended out a distance of nine feet and was of a suspended height of ten feet above the surface of the water. The board was uncovered and bare excepting for two or three feet at its end. That area had been previously covered by rough roofing paper to enable divers to negotiate dives without slipping. However, on the evening in question such covering had become partially torn and its serviceability negatived.

In all, the plaintiff attempted to use the high diving board on three occasions that night at intervals of ten minutes. On each occasion she walked out midway on the board and from the right side prepared to negotiate a dive. She did not go out to the end of the board for two reasons. First, the board became springy the farther she walked out; and second, the lighting from the artificial lights on the fence surrounding the bathing area illuminated the water below the right of the diving board and that portion of the board far better than they did the water below the end of the board and that portion of the board. The defendants knew that their patrons frequently used for diving that portion of the board used by the plaintiff.

The first time the plaintiff went off the board she simply jumped into the water below. The second time off she negotiated a dive after receiving instructions from a lifeguard how to do so. The third time off involved a mishap and resulting injuries to the plaintiff. Her feet slipped on the wet and uncovered board as she was pushing off, causing her to lose balance. She struck the water below with her legs and back arched over her head. The impact of her body with the water was to the shoulders and upper back.

The last time the defendants caused the diving board to be inspected was one week before the evening of June 21, 1954. They had no idea as to the general condition of the board during the intervening week and that it was wet and slippery when being used by the plaintiff. For all that appears this lack of knowledge also existed on the part of their employees. On the evening in question all of the defendants' facilities, including the bathing facilities, were in considerable use by patrons.

By way of special defense the defendants plead the following: "Any and all injuries alleged by plaintiff in her complaint are due to her negligence through her participation in a game or frolic, which negligent actions of plaintiff were in direct violation of the safety instructions of defendants through their agents." The defense is totally lacking in evidential support. It is expressly found that the plaintiff was not participating "in a game or frolic." She was using the diving board in an orderly manner and not in any kind of manner suggested by the interposed defense. Hence the subject of that defense avails the defendants nothing. If the defendants had intended to invoke the doctrine of assumption of risk, or some other phase of contributory negligence, such has not been done and is therefore not in the case for consideration. See Practice Book

§ 104. So it is that the only questions involved on the liability aspects of the case are whether the plaintiff has sustained any one of her allegations respecting negligence on the part of the defendants and that such constituted a proximate cause of her injuries.

As applied to the plaintiff's case as pleaded, and in the light of the evidence presented, the following cases cited in her brief sufficiently contain the applicable law: *Nordgren* v. *Strong,* 110 Conn. 593; *Chardon* v. *Alameda Park Co.,* 1 Cal. App. 2d 18; *Barrett* v. *Lake Ontario Beach Improvement Co.,* 174 N.Y. 311; and see 52 Am. Jur. 291 § 47, 293 § 48. The observation of Chief Justice Wheeler in *Nordgren* v. *Strong,* supra, 601, is particularly worthy of note: "If the conduct of the business of a public resort requires the proprietor in the exercise of reasonable care to furnish provision for guarding the patrons from danger in availing themselves of the attractions and enjoyments of the resort, or provision for aiding them in escaping from such danger resulting from their use of these facilities, or for saving them after they have through their negligence gotten themselves into the danger, he must make reasonable provision. What reasonable care would require of a proprietor of a public resort must depend upon the conditions and the circumstances present. No absolute test can be set up."

Without laboring matters further, the conclusion reached is that the defendants through their employees and agents were negligent in at least the following respects: They knew or should have known that the high diving board was wet and slippery; they knew or should have known that the plaintiff was attempting dives on the right side thereof, which was wet, slippery, and barren of any protective device to lessen slipping; and they did not warn the plaintiff of the danger of diving or otherwise protect her welfare. These omissions were the proximate

cause of the plaintiff's mishap and of her resulting injuries.

Damages are in order. The final question relates to what would constitute a fair and just award. The impact with the water caused the plaintiff to lose consciousness for a brief period. After she was revived she was taken by ambulance to a hospital to be treated for shock but not confined. She suffered a possible concussion and a sprained back. In addition to pain and suffering produced, cash out-of-pocket expenses are these: Bill of Dr. Brody, $75; bill of Dr. DelGrego for x-rays, $20; ambulance, $15; loss of wages as a typist for three weeks, $108 ($36 a week). These specific items total $218.

It is deemed that the sum of $718 represents a fair, just and adequate compensation to the plaintiff for injuries to her person and as reimbursement for incurred expenses and losses resulting from the determined liability of the defendants caused by the episode of June 21, 1954. She suffered no permanent injuries and upon the advice of her doctor resumed swimming shortly thereafter as a form of rehabilitating exercise. Judgment may enter awarding damages in the amount stated.